6000 1426965

*70

FEB 18 2016

| | | |
|---|---|---|
| KELLY LYNN WHITE<br>2822 Cub Hill Road<br>Parkville, Maryland 21234, | * | IN THE |
| | * | CIRCUIT COURT |
| Plaintiff | * | FOR |
| vs. | * | BALTIMORE CITY |
| LIBERTY MUTUAL FIRE INSURANCE<br>COMPANY<br>11350 McCormick Road<br>Suite 301, Executive Plaza IV<br>Hunt Valley, Maryland 21031 | * | Case No.: |
| Serve On:<br>Alfred W. Redmer, Jr.<br>Insurance Commissioner<br>Maryland Insurance Administration<br>200 Saint Paul Place, Suite 2700<br>Baltimore, Maryland 21202 | * | |
| and | * | |
| AMICA MUTUAL INSURANCE COMPANY<br>P.O. Box 9690<br>Providence, Rhode Island 02940, | * | |
| Serve On:<br>Alfred W. Redmer, Jr.<br>Insurance Commissioner<br>Maryland Insurance Administration<br>200 Saint Paul Place, Suite 2700<br>Baltimore, Maryland 21202 | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \*

## COMPLAINT

The Plaintiff, Kelly Lynn White, by her attorney, Charles E. Matz, sues the

1



Defendants, Liberty Mutual Fire Insurance Company and Amica Mutual Insurance Company, and states as follows:

1. The Plaintiff is a resident of Baltimore County.

2. Defendant Liberty Mutual Fire Insurance Company is an insurance company that is authorized to conduct business in the State of Maryland.

3. Defendant Liberty Mutual Fire Insurance Company regularly conducts business in Baltimore City.

4. Defendant Amica Mutual Insurance Company is an insurance company that is authorized to conduct business in the State of Maryland.

5. Defendant Amica Mutual Insurance Company regularly conducts business in Baltimore City.

6. On July 4, 2009, at approximately 10:00 p.m., the Plaintiff (whose name at that time was Kelly Lynn Gilbert) was a passenger in a car that was being driven by Ronald Krenzer (the "Krenzer car") in an eastbound direction on Interstate 70 in Howard County, just west of the junction with U.S. Route 29. The Plaintiff was sitting in the car's right rear passenger seat. At the same time, and near the Krenzer car, friends of the Plaintiff were traveling on eastbound Interstate 70 on two motorcycles. A tire of one of the motorcycles blew. That motorcycle and the other motorcycle pulled over to the right shoulder of eastbound Interstate 70. Mr. Krenzer turned on the car's hazard lights and pulled over to the right shoulder, behind the motorcycles. He stopped the car on the shoulder with its hazard lights flashing.

7. A few seconds later, while the Krenzer car was stopped on the right shoulder with its hazard lights flashing, a motor vehicle that was being driven on eastbound Interstate 70 by Ronald L. Burkhart moved to the right, onto the right shoulder, and collided with the rear of the Krenzer car with great force. The Plaintiff was inside the Krenzer car at the time, still sitting in its right rear passenger seat. The impact pushed the Krenzer car so that its right front part hit a guardrail.

8. The collision was caused by Mr. Burkhart's operation of his vehicle in a careless and negligent manner. Mr. Burkhart was negligent in that he failed to keep a proper lookout, failed to keep his vehicle under control, failed to exercise reasonable care to avoid driving onto the shoulder and colliding with the Krenzer car that he saw, or should have seen, was parked on the shoulder, was traveling at a speed that was greater than that which was reasonable and prudent under the circumstances, was driving while under the influence of alcohol, and was in other respects careless and negligent.

9. Mr. Burkhart owed the Plaintiff a duty of care to operate in a proper manner the vehicle that he was driving, and breached this duty by failing to operate the vehicle in a safe and proper manner, thereby causing the collision.

10. As a proximate result of Mr. Burkhart's negligence, the Plaintiff suffered painful bodily injuries. She has suffered pain and mental anguish as a result of these injuries. She has been required to obtain treatment for the injuries that she suffered as a result of the collision, and she has incurred expenses for health care providers and medicines to treat and administer to her injuries.

11. The Plaintiff was injured and damaged in other respects as a proximate result of Mr. Burkhart's negligence.

12. On June 27, 2012, the Plaintiff filed an action in tort against Mr. Burkhart in the Circuit Court for Baltimore City, seeking compensation for the injuries and damages that she suffered as a result of the collision of July 4, 2009. On Mr. Burkhart's motion, the case was transferred for improper venue to the Circuit Court for Frederick County.

## COUNT I
### (Breach of Contract – Underinsured Motorist Insurance – Defendant Liberty Mutual Fire Insurance Company)

13. The Plaintiff re-asserts and incorporates by reference the allegations set forth in Paragraphs 1 through 12 of this Complaint, as if those allegations were fully set forth herein.

14. At the time of the collision, Mr. Burkhart's vehicle was covered by a motor vehicle liability insurance policy that was issued by Progressive Specialty Insurance Company ("Progressive"). Mr. Burkhart was the named insured under the policy. The policy provided that Progressive would pay claims for bodily injuries that arose out of motor vehicle accidents that involved the insured vehicle and for which Mr. Burkhart was liable. The policy also provided that the maximum that Progressive would pay on such a claim was $20,000.00 to any one person.

15. The Krenzer car (the vehicle that the Plaintiff was occupying when the collision occurred) was owned by Anthony N. Serio. Mr. Krenzer was operating the car at the time with the permission of Mr. Serio.

16. The Krenzer car was insured at the time of the collision by a policy of insurance that Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") had issued to Mr. Serio.

17. The policy that Liberty Mutual issued contained "uninsured motorist" coverage, in which Liberty Mutual agreed to pay to the policy's insureds all sums (up to a maximum of $100,000.00 per person and $300,000.00 per accident) that those insureds were entitled to recover from the owner or operator of an "uninsured motor vehicle" because of bodily injuries sustained in a motor vehicle accident that arose out of the ownership, maintenance, or use of the "uninsured motor vehicle."

18. Under the terms of the policy, passengers in the Krenzer car are insureds under the policy's uninsured motorist coverage. Therefore, the Plaintiff, as a passenger in the Krenzer car, was an insured under the uninsured motorist coverage.

19. Under Liberty Mutual's policy of insurance, and under Maryland law, an "uninsured motor vehicle" includes a motor vehicle for which the limits of liability under all valid and collectible liability insurance policies applicable to bodily injury or death are less than the uninsured motorist coverage limit of the insurance policy that Liberty Mutual issued for the Krenzer car. Because the $20,000.00 per-person bodily injury liability coverage limit in Mr. Burkhart's liability insurance policy from Progressive was less than the $100,000.00 per-person coverage limit of the uninsured motorist coverage provided by the policy that Liberty Mutual issued, Mr. Burkhart's vehicle was an "uninsured motor vehicle" under the policy.

20. On January 8, 2013, Progressive offered, in writing, to pay $20,000.00 to the Plaintiff to settle the Plaintiff's claims against Mr. Burkhart. As stated above, $20,000.00 was the per-person limit of the bodily injury liability coverage in the Progressive policy that covered Mr. Burkhart's vehicle. Pursuant to the procedure set forth in § 19-511 of the Insurance Article of the Maryland Code, the Plaintiff, on January 22, 2013, sent a copy of Progressive's settlement offer to Liberty Mutual by certified mail. On January 25, 2013, Liberty Mutual agreed, in writing, to allow the Plaintiff to accept Progressive's $20,000.00 offer and to release her claims against Mr. Burkhart. Liberty Mutual also agreed in the same letter to waive its subrogation rights against Mr. Burkhart. Also in the same letter, the Liberty Mutual employee said that he would place the Plaintiff's file into queue to be evaluated.

21. As authorized by Liberty Mutual's consent (and by the consent of Defendant Amica Mutual Insurance Company, which will be discussed in Paragraph 35 of this Complaint), the Plaintiff accepted the $20,000.00 settlement offer from Progressive and, on April 15, 2013, signed a release of her claims against Mr. Burkhart. This settlement and release were without prejudice to the Plaintiff's rights and ability to pursue a claim against Liberty Mutual under the uninsured motorist coverage of Liberty Mutual's policy. As part of the settlement, the Plaintiff voluntarily dismissed her lawsuit against Mr. Burkhart. The stipulation of dismissal was filed in the Circuit Court for Frederick County on April 22, 2013.

22. Under Liberty Mutual's contract with Mr. Serio (of which the Plaintiff, as an insured, was an intended third-party beneficiary), and under Maryland law, Liberty Mutual

6

is required to pay to the Plaintiff the amount of damages that the Plaintiff would be entitled to recover from Mr. Burkhart for the bodily injuries that the Plaintiff suffered as a result of Mr. Burkhart's negligent operation of his vehicle, minus the $20,000.00 that the Plaintiff received from Progressive. The limit of Liberty Mutual's liability to the Plaintiff is $80,000.00, which is the difference between: (1) the $100,000.00 per-person coverage limit of the uninsured motorist coverage in the Liberty Mutual policy that covered the Krenzer car, and (2) the $20,000.00 per-person bodily injury liability coverage limit in the Progressive policy that covered Mr. Burkhart's vehicle.

23. The $20,000.00 that the Plaintiff received from Progressive is not sufficient to compensate the Plaintiff for the injuries and damages that she suffered as a result of the collision of July 4, 2009. The Plaintiff is entitled to be paid by Liberty Mutual, subject to the $100,000.00 coverage limit, for the damages that she sustained as a result of the collision, to the extent that those damages exceed $20,000.00.

24. The Plaintiff has complied with the terms of the policy that Liberty Mutual issued and that covered the Krenzer car.

25. Notwithstanding a demand by the Plaintiff, Liberty Mutual has failed to pay to the Plaintiff the amount that she is entitled to receive under the insurance policy and under Maryland law. Therefore, the Defendant has breached the insurance policy.

26. Liberty Mutual made its first settlement offer to the Plaintiff on February 21, 2013.

WHEREFORE, Plaintiff Kelly Lynn White demands judgment against Defendant Liberty Mutual Fire Insurance Company, and claims damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus the costs of this suit.

## COUNT II
### (Underinsured Motorist Insurance Claim – Defendant Amica Mutual Insurance Company)

27. The Plaintiff re-asserts and incorporates by reference the allegations set forth in Paragraphs 1 through 26 of this Complaint, as if those allegations were fully set forth herein.

28. At the time of the collision, the Plaintiff was living with her parents, James and Susan Gilbert, in White Hall, Maryland.

29. At that time, there was in force a policy of motor vehicle insurance that Defendant Amica Mutual Insurance Company ("Amica") had issued to James and/or Susan Gilbert.

30. The policy that Amica issued contained "uninsured motorist" coverage, in which Amica agreed to pay to the policy's insureds all sums (up to a maximum of $500,000.00) that those insureds were entitled to recover from the owner or operator of an "uninsured motor vehicle" because of bodily injuries sustained in a motor vehicle accident that arose out of the ownership, maintenance, or use of the "uninsured motor vehicle."

31. Under the terms of the Amica policy, the Plaintiff, as a relative of James and Susan Gilbert who lived with them, was an insured under the policy's uninsured motorist coverage on July 4, 2009.

32. Under Amica's policy of insurance, and under Maryland law, an "uninsured

motor vehicle" includes a motor vehicle for which the limits of liability under all valid and collectible liability insurance policies applicable to bodily injury or death are less than the uninsured motorist coverage limit of the insurance policy that Amica issued. Because the $20,000.00 per-person bodily injury liability coverage limit in Mr. Burkhart's liability insurance policy from Progressive was less than the $500,000.00 coverage limit of the uninsured motorist coverage provided by the policy that Amica issued, Mr. Burkhart's vehicle was an "uninsured motor vehicle" under the policy.

33. Under the terms of the policy, the uninsured motorist coverage of the Amica policy is excess uninsured motorist coverage over the $100,000.00 of applicable uninsured motorist coverage of the Liberty Mutual policy that covered the Krenzer car. This means that Amica is contractually obligated to pay to the Plaintiff (who, as an insured, was an intended third-party beneficiary of the insurance contract) the amount of damages that the Plaintiff would be entitled to recover from Mr. Burkhart for the bodily injuries that the Plaintiff suffered as a result of Mr. Burkhart's negligent operation of his vehicle on July 4, 2009, to the extent that those damages are between $100,000.01 and $500,000.00, inclusive. Amica's maximum liability to the Plaintiff is $400,000.00 ($500,000.00 minus $100,000.00).

34. The $20,000.00 that the Plaintiff received from Progressive is not sufficient to compensate the Plaintiff for the injuries and damages that she suffered as a result of the collision of July 4, 2009. The Plaintiff is entitled to be paid by Amica, subject to the $500,000.00 coverage limit, for the damages that she sustained as a result of the collision, to the extent that those damages exceed $100,000.00.

35. Pursuant to the procedure set forth in § 19-511 of the Insurance Article of the Maryland Code, the Plaintiff, on January 28, 2013, sent a copy of Progressive's $20,000.00 settlement offer to Amica by certified mail. On March 12, 2013, Amica agreed, in writing, to allow the Plaintiff to accept Progressive's $20,000.00 offer and to release her claims against Mr. Burkhart. Amica also agreed to waive its subrogation rights against Mr. Burkhart. As the Plaintiff stated in Paragraph 21 of this Complaint, she signed a release of Mr. Burkhart on April 15, 2013. This settlement and release were without prejudice to the Plaintiff's rights and ability to pursue a claim against Amica under the uninsured motorist coverage of Amica's policy. As the Plaintiff also stated in Paragraph 21 of this Complaint, she voluntarily dismissed her lawsuit against Mr. Burkhart as part of the settlement.

36. The Plaintiff has complied with the terms of the policy that Amica issued.

37. Because Liberty Mutual has not paid its maximum liability to the Plaintiff, Amica (as the excess underinsured motorist carrier) has not yet been called upon to pay the Plaintiff. The Plaintiff is joining Amica as a defendant in this case so that Amica can defend and protect its interests and so that Amica, consistent with its due process rights, will be bound by a determination by the fact finder that the amount of damages that the Plaintiff would be entitled to recover from Mr. Burkhart for the bodily injuries that she suffered as a result of the collision of July 4, 2009 exceeds $100,000.00.

WHEREFORE, Plaintiff Kelly Lynn White demands judgment against Defendant Amica Mutual Insurance Company, and claims damages in an amount that exceeds Seventy-

Scan Date: Scan Date: 2/19/2016 8:59:26 AM

Five Thousand Dollars ($75,000.00), plus the costs of this suit.

*Charles E. Matz*

Charles E. Matz
Matz & Matz, P.A.
920 Providence Road, Suite 402
Towson, Maryland 21286
Telephone: (410) 823-5805
Fax: (410) 823-0069
E-Mail: matzlaw@verizon.net

Attorney for Plaintiff